UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| American Litho, Inc.,<br>a Michigan corporation, | Civil No. 08-CV-5892 (JMR/SRN) |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| Imation Corp.,<br>a Delaware corporation, | |
| Defendant. | |

___

Richard A. Gaffin, Miller, Canfield, Paddock & Stone, PLC, 99 Monroe Ave. NW, Suite 1200, Grand Rapids, Michigan 49503 and John D. Schrager, Wagner, Falconer & Judd, Ltd., 80 S. 8th Street, Suite 1700, Minneapolis, Minnesota 55402, for Plaintiff.

David B. Potter and David A. Prange, Oppenheimer, Wolff & Donnelly, LLP, 45 S. 7th Street, Suite 3300, Minneapolis, Minnesota 55402, for Defendant.

___

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the Court on Defendant's [First] Motion for Partial Summary Judgment [Doc. No. 27]. In this motion, Defendant seeks summary judgment on its counterclaim for rescission. This matter was referred to the undersigned by an Order of Reference entered by the District Court on June 16, 2009, pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b). For the reasons set forth below, the Court recommends that Defendant's Motion for Partial Summary Judgment be denied.

I. **BACKGROUND**

This case involves breach of contract, fraudulent inducement and negligent misrepresentation claims related to a license agreement. On March 15, 2005, Plaintiff American Litho, Inc. ("American Litho") and Defendant Imation Corp. ("Imation") executed a license (the

1

"License Agreement") to practice U.S. Patent Nos. 6,605,416 (the "'416 Patent") and RE 38,251 (the "'251 Patent") to allow Plaintiff to use Defendant's patented infra-red dye for developing a near infra-red printing plate. Plaintiff alleges that Defendant represented and warranted that it had the right to grant a non-exclusive license to practice the '416 Patent. (Am. Complaint ¶¶ 6-7).

Stan Busman, an Imation chemist and one of the inventors of Defendant's patented dyes, worked with Plaintiff to identify ways in which Defendant could assist Plaintiff in the development of a thermal printing plate. (Busman Dep. at 6-7, 16-18, 59-66, 93-94, Ex. G to Decl. of Joseph D. Kantor in Supp. Pl.'s Mem. Opp'n Def.'s Mot. Partial Summ. J.; Levinson Dep. at 68-69, Ex. C to Decl. of Joseph D. Kantor in Supp. Pl.'s Mem. Opp'n Def.'s Mot. Partial Summ. J.). Busman suggested that Plaintiff could use the patented dyes in developing a thermal plate and suggested that Plaintiff seek a non-exclusive license from Defendant to practice the patented dyes. (Busman Dep. at 71-75, 92-94, 107-08, Ex. G to Pl.'s Mem.; Email of 8/20/04 from S. Busman to S. Klotz, T. Dominique, J. Huizenga, Ex. K. to Pl.'s Mem.). Mr. Busman contacted Eric Levinson, Defendant's Executive Director of Intellectual Property and Assistant General Counsel, to see whether Defendant could license the patents to Plaintiff for that purpose. (Busman Dep. at 104-06, 113-14, Ex. G to Pl.'s Mem.; Emails of 12/21/04-1/6/05 between S. Busman and R. Wax, Ex. L to Pl.'s Mem.; Sullivan Dep. at 44, Ex. D to Pl.'s Mem.; Email of 1/26/05 from E. Levinson to C. Blanker, S. Busman, Ex. N to Pl.'s Mem.). Levinson told him that Defendant could grant Plaintiff a non-exclusive license to use the patents. (Busman Dep. at 109-110, Ex. G to Pl.'s Mem.; Levinson Dep. at 65-72, 89-97, Ex. C to Pl.'s Mem.). On behalf of Defendant, Eric Levinson drafted and negotiated the License Agreement. (Levinson Dep. at 111, Ex. B to Decl. of David A. Prange in Supp. Def.'s Mem. Supp. Mot. Partial Summ. J.).

Plaintiff's president, Steven Klotz, negotiated the agreement on behalf of Plaintiff. (Klotz Dep. at 16, 108-109, Ex. C to Def.'s Mem.).

Plaintiff set out to incorporate the patented dyes into its thermal plate project and, as of October 2005, had beta tested its thermal plates, which incorporated one of the patented dyes, and had already sold the product to some customers. (Wax Dep. at 20-32, Ex. O to Pl.'s Mem.).[1]

On October 17, 2005, the General Counsel for Kodak Polychrome Graphics ("Kodak") – to whom Defendant had previously granted an exclusive license to the patents in question – emailed Defendant's General Counsel about "a rumor" he had heard that Plaintiff was incorporating one of the patented dyes into the thermal plate it was developing. (See email of 10/25/05 from E. Levinson to A. Buharin, Ex. P to Pl.'s Mem.; Agreement between Defendant and KPG, Ex. E to Pl.'s Mem. § 1.20.2, 1.20.4). Defendant investigated the situation, and on November 14, 2005, Levinson sent an email to Plaintiff acknowledging that the exclusive license agreement with Kodak prevented Defendant from later licensing the same patent to Plaintiff. On January 19, 2006, Defendant formally informed Plaintiff by letter that, at the time the License Agreement was executed, Defendant did not have the right to grant the License because of an earlier agreement between it and Kodak. (Am. Complaint ¶¶ 8-9). The letter specifically stated, "Imation is in breach of the [License] Agreement because Imation did not have the right to grant American Litho the license that it granted in the [License] Agreement. Accordingly, the [License] Agreement must be terminated and American Litho may be entitled to damages." Defendant also advised Plaintiff that it had a duty to mitigate its damages. Plaintiff notes that nowhere in the letter did Defendant use the term "rescission" or "rescinded" in describing the

---

[1] On October 1, 2005, Konica Minolta Graphic Imaging U.S.A., Inc. ("MGUS"), acquired Plaintiff, which became a wholly-owned subsidiary of MGUS. (Wax Dep. at 22, Ex. E to Def.'s Mem.)

3

status of the agreement by the parties and the term "terminated" is legally distinct from the term "rescinded."

In an effort to mitigate its damages, Plaintiff designed different technology to avoid the '416 Patent. Plaintiff claims that this "design around" process took almost a year and it incurred over $1,000,000 in out-of-pocket costs and charges in connection with developing the alternative technology and damages for lost sales, profits and market share. (Am. Complaint ¶ 11; Newton Dep. at 198-99, Ex. R to Pl.'s Mem.; Plaintiff Damages Report, Ex. S to Pl.'s Mem.).

Plaintiff filed the instant suit on October 31, 2008 [Doc. No. 1]. Defendant thereafter brought a Counterclaim for declaratory judgment seeking rescission of the License Agreement as of November 14, 2005. In the instant Motion for Partial Summary Judgment on its Counterclaim, Defendant seeks to rescind the contract based on its alleged unilateral mistake. Plaintiff asserts that Defendant is not entitled to seek rescission of the contract in November 2005 because Defendant was grossly negligent in making its unilateral mistake. Further, Plaintiff contends that even if this Court concludes Defendant has the right to seek rescission, the Court should deny Defendant's motion for summary judgment because rescission would cause a substantial hardship on Plaintiff. As set forth below, this Court concludes that rescission of the contract would impose a substantial hardship on Plaintiff and therefore the Court recommends that Defendant's motion to for summary judgment be denied.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also e.g. Myers v. Lutsen Mountains Corp., 587 F.3d 891,

893 (8th Cir. 2009). The burden is on the moving party to show that the entry of summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party. Id. at 322-23. All evidence will be viewed in the light most favorable to the nonmoving party. Vette Co. v. Aetna Cas. & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980).

### III. DISCUSSION

The doctrine of rescission allows a party to disaffirm or set aside a contract and seek equitable relief. Ventura v. Titan Sports, Inc., 65 F.3d 725, 732 (8th Cir. 1995) (applying Minnesota law). "The effect of the remedy of rescission is generally to so extinguish a rescinded contract so effectively that in contemplation of law it has never had existence." Mead v. Mead, 974 F.2d 990, 992 (8th Cir. 1992) (quoting Chase Manhattan Bank, N.A. v. Clusiau Sales and Rental, Inc., 308 N.W.2d 490, 494 (Minn. 1981)); see also Johnny's, Inc. v. Njaka, 450 N.W.2d 166, 168 (Minn. Ct. App. 1990); Pioneer Indus., Inc. v. Hartford Fire Ins. Co., No. 07-4421, 2009 WL 2187379, *12 (D. Minn. July 22, 2009). "Because the law favors the enforcement of contracts, a right to rescind arises only in circumstances that may fairly be described as 'unusual.'" N.L.R.B. v. MEMC Elec. Materials, Inc., 363 F.3d 705, 709 (8th Cir. 2004). A contract may be rescinded based on mutual mistake, mutual assent to rescission, a unilateral mistake induced by the other party, or a unilateral mistake where the contract can be rescinded without substantial hardship to the adverse party. Gethsemane Lutheran Church v. Zacho, 258 Minn. 438, 443-45, 104 N.W.2d 645, 649 (1960); Lyon Financial Services, Inc. v. Hearyman, No. A08-1795, 2009 WL 1515598, *5 (Minn. Ct. App. June 2, 2009); Gfrerer v. Lemcke, No.

A08-0873, 2009 WL 749584, *3 (Minn. Ct. App. March 24, 2009). In this case, Defendant seeks to rescind the contract based on the doctrine of unilateral mistake.

The Minnesota courts have stated that a contract may be rescinded based on a unilateral mistake in two different situations. Generally, a party's own unilateral mistake is not a basis for rescission unless there is an ambiguity, fraud or misrepresentation by the other party. Gethsemane, 258 Minn. at 443; State v. Rodriguez, 775 N.W.2d 907, 912 (Minn. Ct. App. 2009); A.A. Metcalf Moving & Storage Co., Inc. v. North St. Paul-Maplewood Oakdale Sch., 587 N.W.2d 311, 318 (Minn. Ct. App. 1998). Thus, when one party makes a mistake, normally they cannot seek rescission of the contract unless the adverse party fraudulently caused the mistake or knew the other party was mistaken. Id. In Gethsemane, the court articulated a second possible basis for a party to seek rescission based on unilateral mistake. Gethsemane, 258 Minn. at 443. Based on principles of equity, the court in Gethsemane stated that, a court "does have the right to rescind a contract for a purely unilateral mistake of one contracting party not induced or contributed to by the other . . . only when enforcement would impose an oppressive burden on the one seeking rescission, and when rescission would impose no substantial hardship on the one seeking enforcement." Gethsemane, 258 Minn. at 443; see also Inver Grove Heights Market Place, LLC v. ANC Foods III, Inc., No. A07-1197, 2008 WL 2574482, *8 (Minn. Ct. App. July 1, 2008); Nicholson v. Univ. of Minn. Federal Credit Union, No. A06-652 2007 WL 331321, *4 (Minn. Ct. App. Feb. 6, 2007); S O Designs USA, Inc. v. Rollerblade, Inc., 620 N.W.2d 48, 53 (Minn. Ct. App. 2000); Winthrop Resources Corp. v. Sabert Corp., 567 F. Supp. 2d 1084, 1095 (D. Minn. 2008). It is the burden of the party seeking rescission to establish that there is not substantial hardship on the party seeking to enforce the contract. S. Minn. Mun. Power Agency v. City of St. Peter, 433 N.W.2d 463, 471 (Minn. Ct. App. 1988).

### A.     Defendant Did Not Seek Rescission of the Contract in 2005 or 2006

At the outset, the Court questions whether Defendant can seek to rescind a contract that it already unilaterally terminated. Generally, once a contract has been terminated, the party terminating the contract cannot later seek rescission of the contract. See e.g. Henry v. Schultz, 408 N.W.2d 635, 637 (Minn. Ct. App. 1987) (where parties' rights are terminated under a contract for deed, party cannot later seek rescission of the contract; "One cannot rescind a contract no longer in existence"); Gatz v. Langenfeld and Sons Construction, Inc., 356 N.W.2d 716, 718 (Minn. Ct. App. 1984) (same).

In this case, the parties entered into the License Agreement in March 2005. In November 2005, Defendant discovered it did not have the authority to enter into the License Agreement and breached the Agreement. In the January 19, 2006 letter, Defendant acknowledged it had breached the Agreement, unilaterally terminated the agreement, and warned Plaintiff to mitigate its damages. Now, years later, Defendant seeks to rescind the contract it already terminated and it already breached.

Defendant appears to be arguing that its November 2005 email and January 2006 letter were a notice of rescission rather than a termination of the contract, despite the fact that neither of those communications used the terms "rescind" or "rescission." Citing to Busch v. Model Corp., 708 N.W.2d 546, 551-52 (Minn. Ct. App. 2006), Defendant argues that it did not have to use the word "rescission" in order to seek rescission of the contract. Defendant is correct that the court in Busch granted rescission of the contract where one party used the word "cancelling" instead of "rescinding." That case is distinguishable, however, because in Busch the court was considering whether the parties mutually assented to rescission of the contract. Id. The court noted that "[m]utual assent to rescind a contract may be inferred from the attendant

7

circumstances and conduct of the parties," and therefore the plaintiff's use of the term cancellation, under the circumstances, showed an intent to agree to the rescission. This case, however, does not involve mutual assent to rescission and therefore Busch is inapplicable.

Rescission and termination are distinct legal concepts. Terminating a contract ends the contract going forward and relieves the parties from future performance of the obligations under the contract. 17B C.J.S. Contracts § 448. In contrast, "[r]escission is the unmaking of a contract which not only terminates the contract but abrogates it and undoes it from the beginning." Gfrerer, 2009 WL 749584 at *3; (citing Johnny's, Inc., 450 N.W.2d at 168); see also 17B C.J.S. § 492. While the November 2005 email made it clear to Plaintiff that Defendant did not have the ability to enter into License Agreement, it never put Plaintiff on notice that Defendant wanted to rescind the contract. Nowhere in the November 2005 email does Defendant demonstrate an intent to rescind the contract. In fact, the email leaves the status of the agreement open for further discussions. (See Exhibit 35 attached to the Deposition of Robert Feldberg). Nor does the January 19, 2006, letter from Defendant put Plaintiff on notice of Defendant's intent to rescind the contract. In that letter, Defendant never mentions the word "rescind," but only states "the Agreement must be terminated." Neither the November 2005 email nor the January 2006 letter gave Plaintiff notice that Defendant was seeking to rescind the contract. Therefore, Defendant cannot now, years later, seek rescission of the contract.

### B. The Contract Cannot Be Rescinded Based on Unilateral Mistake

Defendant's motion for summary judgment on its Counterclaim should be denied because the circumstances of this contract do not satisfy either test for unilateral mistake. First, Defendant's mistake was not based on the actions of Plaintiff. Given that Defendant's mistake concerned its own authority to enter into the License Agreement, there is no suggestion that

Plaintiff made any misrepresentations causing Defendant's mistake. Nor is there any evidence in the record that Plaintiff knew Defendant did not have the authority to enter into the contract and that Defendant relied on that representation. Rather, Defendant's mistake was completely of its own making. Therefore, the contract should not be rescinded under the first test for unilateral mistake. Moreover, Defendant has utterly failed to satisfy its burden of demonstrating that the contract could be rescinded without a substantial hardship on Plaintiff. In fact, Plaintiff will suffer an extreme hardship if the contract is rescinded.

Defendants' Counterclaim for rescission is simply an attempt to limit Plaintiff's damages. Citing to Winthrop Res. and S. Minn., Defendant contends that when "the enforcing party's damages as of the time of notice of the mistake is limited to out-of-pocket expenditures that can be easily refunded, substantial hardship does not exist." (Memo. of Law in Supp. of Def.'s Mot. for Partial Summ. J. at 7) (citing Winthrop Res., 567 F. Supp. 2d at 1095; S. Minn., 433 N.W.2d at 471). The Court has read and reviewed these cases thoroughly and agrees with Plaintiff that these cases do not support Defendant's contention. In Winthrop Res. the court did not even analyze whether there would be a substantial hardship on the enforcing party. Winthrop Res., 567 F. Supp. 2d at 1095. Rather, the court stated that, even if the defendant could establish that rescission would not cause substantial hardship to the plaintiff, the court would not rescind the contract because, in commercial transactions, a contract should not be rescinded "merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract." Id. In S. Minn., the court concluded that the plaintiff would incur substantial hardship if the contract was rescinded because the power company had incurred substantial financial obligations in reliance on the contract and rescission would negatively affect its bond ratings and debt servicing. S. Minn., 433 N.W.2d at 471. The court did not discuss under what

circumstances a party would not suffer a substantial hardship. These cases are also inapplicable to the instant situation because, here, Plaintiff seeks more than the recovery of out-of-pocket expenditures; Plaintiff seeks substantial lost profit damages. Were the contract rescinded, Plaintiff would be precluded from seeking any consequential damages. E. Edelman & Co. v. Queen Stove Works, 205 Minn. 7, 19, 284 N.W. 838, 844 (Minn. 1939).

### C. Defendant May Not Seek Rescission Based on a Unilateral Mistake of Fact Where Defendant's Negligence Is at Issue

Moreover, Plaintiff contends that Defendant is prohibited from seeking rescission of the contract based on either test for unilateral mistake because Defendant's "mistake" was the result of its own gross negligence. Specifically, Plaintiff contends Defendant was woefully negligent in failing to adequately investigate the facts relating to its ability to grant the license to Plaintiff. (Pl.'s Brief at 9 and n. 3).

Whether a party's negligence prohibits the party from seeking rescission based on unilateral mistake has not been directly addressed by the Minnesota courts. In dicta, however, the Minnesota Supreme Court has suggested that if a party's mistake is due to negligence, the party cannot obtain rescission of the contract. Becker v. Bundy, 177 Minn. 415, 419, 225 N.W. 290 (Minn. 1929) (citing Morgan v. Owens, 228 Ill. 598, 603, 81 N.E. 1135, 1137 (Ill. 1907)). "A court of equity has the power to rescind or cancel an agreement at the request of one party upon the ground that *without negligence* he entered into it through a mistake of facts material to the contract, when it can do so without injustice to the other party." Id. (emphasis supplied). Likewise, the Minnesota Supreme Court has stated that the "absence of negligence of the person seeking relief" is one of the equitable considerations that a court should consider in deciding if a party can be relieved from a contract based on a unilateral mistake. Peterson v. First Nat'l Bank of Ceylon, 162 Minn. 369, 379, 203 N.W. 53, 56-57 (1925). However, in the decades since these

10

cases were decided, the Minnesota courts have not analyzed what effect, if any, a party's negligence has on their ability to seek rescission of a contract.

A number of other jurisdictions, however, have held that a party's negligence or gross negligence bars the party from seeking rescission of a contract based on unilateral mistake. See e.g. Hikmet v. Turkoglu, No. 08AP-1021, 2009 WL 4699101, *12 (Ohio App. Dec. 10, 2009) ("relief for a unilateral mistake of material fact will not be provided where such mistake is the result of the negligence of the party seeking relief."); VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008) ("rescission of a contract is not appropriate where a unilateral mistake is the product of negligence" (applying New York law)); Culver v. U.S. Dept. of Labor Occupational Safety & Health Admin., No. 3:06CV438, 2006 WL 3199138, *4 (M.D. Pa. Nov. 3, 2006) ("Under Pennsylvania law, if a mistake is unilateral and not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake, the unilateral mistake affords no basis for rescinding the release."); Goodall v. Whispering Woods Center, L.L.C., 990 So. 2d 695, 701 (Fla. Dist. Ct. App. 2008) (holding gross negligence bars a party from seeking rescission based on a unilateral mistake); see also 13 Am. Jur. 2d Cancellation of Instruments § 30, Mistake of fact, generally – Effect of negligence (2009) ("A mistake which allows rescission and cancellation of contract must ordinarily not be due to the negligence of the person seeking rescission and cancellation.").

Defendant cites to Miss. State Bldg. Comm'n v. Becknell Constr., Inc., 329 So. 2d 57, 61 (Miss. 1976), for the proposition that negligence does not bar rescission based on a unilateral mistake. In Becknell, the contract bidder made a mistake in its calculation of a construction bid, and it brought the mistake to the attention of the Plaintiff before the contract was granted. Id. In that case, the court stated "[t]he record unquestionably reveals that negligence caused the

mistake. Implicit in the very definition of 'mistake' is some degree of negligence. Human failing is its essence and it denotes an error of judgment. Nevertheless, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to grant relief from honest but negligent mistake." Id. The Mississippi Supreme Court has since stated, however, that the holding in Becknell is "limited to its specific facts." Hemphill Const. Company, Inc. v. City of Laurel, 760 So. 2d 720, 724 (Miss. 2000). Further, more recent Mississippi cases have affirmed the rule that a party's negligence bars the party from obtaining rescission for a mistake. Covington v. Griffin, 19 So.3d 805, 814 (Miss. Ct. App. 2009) (holding in order to rescind a contract for unilateral mistake, the party seeking rescission must not have been grossly negligent in making the mistake or in sooner seeking redress); Bert Allen Toyota, Inc. v. Grasz, 909 So. 2d 763, 769 (Miss. App. 2005) ("as a general proposition, equity will not act to rescind a contract where the mistake was induced by the negligence of the party seeking rescission.") (citing Turner v. Terry, 799 So. 2d 25, 36 (Miss. 2001)). Although this Court need not reach this issue, because this contract was terminated long ago, overwhelming authority disfavors rescission by a party charged with negligence.

**IV.      RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's [First] Motion for Partial Summary Judgment [Doc. No. 27] be **DENIED**.

Dated:  January 27, 2010                                   s/ Susan Richard Nelson
                                                           SUSAN RICHARD NELSON
                                                           United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 11, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.